## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                        )
FIRST SEALORD SURETY, INC.,             )    CIVIL ACTION No. 00-cv-_____
                                        )
            Plaintiff,                  )
                                        )
v.                                      )
                                        )
TLT CONSTRUCTION CORP.,                 )
                                        )
            Defendant.                  )
_____ )
```

## **COMPLAINT**

### INTRODUCTION

First Sealord Surety, Inc. ("First Sealord") brings this action against TLT Construction Corp. ("TLT") for damages arising out of its issuance of a performance and payment bonds relative to a public construction project in Manchester-by-the-Sea, Massachusetts. First Sealord seeks a judgment declaring that its obligation under the bonds is void, *ab initio*, because TLT withheld and/or concealed information from First Sealord which TLT knew or had reason to know was material to First Sealord's decision of whether (i) to undertake the risk of issuing the bonds; and (ii) to modify the terms of the bonds to include additional work on the project. Likewise, First Sealord seeks recovery of damages for fraudulent inducement, fraud/intentional misrepresentation, negligent misrepresentation, fraudulent concealment, unjust enrichment, and equitable estoppel. First Sealord also seeks recovery of damages for TLT's unfair and deceptive acts or business practices which amount to a willful or knowing violation of G.L. c. 93A, §§2 and 11.

## PARTIES

1. Plaintiff, First Sealord Surety, Inc., is a Pennsylvania corporation with a principal place of business at 789 E. Lancaster Avenue, Villanova, Pennsylvania 19085, that is licensed to issue surety bonds in the Commonwealth of Massachusetts.

2. The Defendant, TLT Construction Corp., is a Massachusetts corporation with a principal place of business at 1 Pope Street, Wakefield, Massachusetts 01880.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as the plaintiff has citizenship diverse from the defendant, and the amount in controversy, exclusive of interest, exceeds $75,000.

4. At all relevant times, TLT conducted business in Massachusetts and is subject to the jurisdiction of this Court.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391, as the events and omissions giving rise to this Complaint occurred, to a substantial extent, in this District.

## FACTS

**Project Background**

6. In approximately 2007, the Manchester Essex Regional School District ("MERSD") issued an invitation to bidders that included plans and specifications for the construction of a new middle-high school to be built in Manchester-by-the-Sea, Massachusetts (the "Project").

7. The plans and specifications for the Project were prepared by The Mount Vernon Group, and included a bid invitation dated March 14, 2007.

8. The plans and specifications for the Project described and depicted the Project as being constructed in multiple phases.

9. TLT was interested in submitting a bid to be the general contractor for the Project and developed an estimate for undertaking the Project work.

**TLT's Negotiations And Subcontracts With NEED**

10. TLT also engaged in discussions with subcontractors that were interested in performing certain subcontract work on the Project, including NEED Construction, LLC ("NEED"). NEED was a company engaged in site construction work.

11. TLT requested that NEED submit a proposal to TLT to perform certain items of work identified in the contract plans and specifications for the Project.

12. On or about April 27, 2007, in response to TLT's request for a proposal, NEED submitted an initial proposal of approximately $1,725,984 to perform portions of work identified in the Project Manual Specifications.

13. On or about April 30, 2007, TLT submitted a bid to MERSD to be the general contractor for the Project, and TLT was subsequently selected as the low bidder. Thereafter, in May 2007, TLT executed a general contract with MERSD to construct a new school building and undertake the associated site work (the "General Contract").

14. After its selection as the low bidder on the Project, TLT received additional proposals in May 2007 from NEED between the range of approximately $1,725,984 and $1,950,000 to perform subcontract work.

15. When it submitted its proposals to TLT, NEED provided specific cost breakdowns for different Sections of the work identified in the Project Manual Specifications.

16. During the process of negotiating a subcontract with NEED, TLT elected to divide NEED's subcontract work into two components: Phase One work and Phase Two work.

17. NEED entered into a subcontract with TLT dated May 18, 2007, to perform work identified as Section 02200 Earthwork, Section 02270 Sediment and Erosion Control, Section 02665 Water Systems and Section 02700 Site Utilities for Phase One of the Project (the "Phase I Subcontract"). The original value of the Phase I Subcontract was $964,800.

18. NEED entered into a second subcontract with TLT also dated May 18, 2007, to perform work also identified as Section 02200 Earthwork, Section 02270 Sediment and Erosion Control, Section 02665 Water Systems and Section 02700 Site Utilities for Phase Two of the Project (the "Phase II Subcontract"). The value of the Phase II Subcontract was $643,200.

19. The Phase I Subcontract and the Phase II Subcontract (collectively, the "NEED Subcontracts") covered the identical sections of the Project Manual Specifications.

20. The NEED Subcontracts also identified a reduced scope of work as compared to the scope of work identified and valued in NEED's prior proposals.

21. Before executing the NEED Subcontracts, and in connection with developing its costs for the General Contract, TLT prepared its own estimates for the work covered by the NEED Subcontracts.

22. TLT estimated that work identified in Section 02200 for "Earthwork," alone, cost approximately $2,564,625. TLT's total estimate for the work identified in the NEED Subcontracts was approximately $3,070,225.

23. TLT was aware of the substantial differences between the values of its own estimates for the work covered by the NEED Subcontracts and the values of the estimates provided in NEED's proposals.

24.     Although TLT estimated that the work covered by the NEED Subcontracts would cost approximately $3,070,225 to perform, TLT entered into the NEED Subcontracts for a total of approximately $1,608,000.

25.     Prior to entering into the NEED Subcontracts, TLT never disclosed to NEED or First Sealord the substantial discrepancies between the value of its estimates for the work covered by the NEED Subcontracts, and the value of the estimates provided by NEED.

**First Sealord's Reliance On The Phase I Subcontract Value In Issuing Performance And Payment Bonds**

26.     Before NEED could start performing its subcontract work, TLT required that NEED obtain performance and payment bonds for the NEED Subcontracts.

27.     TLT requested that NEED obtain performance and payment bonds relative to NEED's work on the Project, but NEED was unsuccessful in obtaining performance and payment bonds.

28.     After several unsuccessful efforts, TLT, TLT's bonding agent, and NEED decided to approach First Sealord to obtain a performance and payment bond for NEED's work on the Project.

29.     On behalf of TLT, TLT's bonding agent, Dick Caruso of Curtain International, contacted First Sealord with a proposal to bond the NEED Subcontracts. At all relevant times, Dick Caruso, and all other representatives of Curtain International, were acting as agents of TLT when communicating with First Sealord.

30.     TLT knew that First Sealord would not issue performance and payment bonds on any subcontract in excess of $1,000,000 without first obtaining an independent engineering review of the scope and value of the work to be performed under such subcontract.

31.     If the total value of either the Phase I Subcontract or Phase II Subcontract had exceeded $1,000,000, First Sealord would have sought and obtained an independent engineering review of the scope and value of the work to be performed under either subcontract.

32.     In order to avoid an independent engineering review of the scope and value of the work to be performed by NEED on the Project, TLT intentionally drafted and executed the Phase I Subcontract and the Phase II Subcontract in amounts less than $1,000,000.

33.     TLT sought to avoid an independent engineering review of the scope and value of the work to be performed by NEED because it knew that such a review would uncover the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts.

34.     TLT was aware that First Sealord did not know about the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts.

35.     TLT withheld information from First Sealord concerning the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts, even though TLT had reason to know that this information was critical to First Sealord's determination of whether to undertake the risk involved with issuing performance and payment bonds for the Phase I Subcontract.

36.     In reliance on the stated value for the Phase I Subcontract of $964,800, First Sealord issued a performance bond and a payment bond on July 30, 2007 for the Phase I Subcontract ("The Bonds").  The Bonds identified NEED as principal, and TLT as obligee. Copies of The Bonds are attached hereto as Exhibit A.

37.     If First Sealord had been aware of the material discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the work covered by the NEED Subcontracts, it would not have issued The Bonds for the Phase I Subcontract.

**NEED's Performance On The Project And Disputes With TLT Over The Scope Of Work**

38.     NEED started to perform the Phase I Subcontract in July 2007.

39.     TLT's "Pay Application 1," dated July 31, 2007, confirmed that TLT identified the value of NEED's subcontract work for "Earthwork" as $2,564,625.

40.     Shortly after NEED started the Phase I Subcontract work, various disputes arose between TLT and NEED over the scope of the Phase I Subcontract work.

41.     As NEED performed the work identified in the Phase I Subcontract, TLT asserted that additional items of work were covered by the Phase I Subcontract, even though those items of work were not identified in the Phase I Subcontract.

42.     Although NEED contended that certain items of work were not covered by the Phase I Subcontract, NEED performed this work at TLT's direction based on TLT's threats that it would backcharge NEED if it did not perform the work.

**First Sealord's Reliance On TLT's Statements In Deciding To Modify And Increase The Amount Of The Bonds**

43.     As of March 2008, NEED was experiencing significant difficulties in performing its subcontract work, including completing its work according to the Project schedule and paying its material and equipment suppliers.

44.     Although NEED was experiencing significant difficulties in performing its subcontract work, TLT, through its bonding agent, Curtain International, and NEED approached First Sealord to request that First Sealord modify and increase the amount of The Bonds.

7

45. TLT was aware of NEED's problems in performing its subcontract work, and of disputes with NEED as to the scope of NEED's subcontract work when an increase in the amount of The Bonds was sought.

46. TLT did not disclose to First Sealord information concerning the problems with NEED's performance of its subcontract work, nor did it disclose the dispute between NEED and TLT as to the scope of the Phase I Subcontract.

47. In reliance on its understanding that NEED was completing the Phase I Subcontract in a reasonable manner, that TLT was satisfied with NEED's performance, and that there were not substantial disputes between NEED and TLT as to the scope of the subcontract work, First Sealord agreed to modify The Bonds. On March 14, 2008, First Sealord issued a Bond Rider that increased the amount of the Bonds by $717,025.48, from $964,800.00 to $1,681,825.48. A copy of the Bond Rider is attached hereto as Exhibit B.

48. If First Sealord had been aware of the extent of the problems with NEED's performance of its subcontract work, and the dispute between NEED and TLT as to the scope of the Phase I Subcontract, it would not have agreed to increase the amount of The Bonds.

**First Sealord's Damages Incurred In Completing NEED's Subcontract Work**

49. By letter dated April 10, 2008, and shortly after First Sealord increased the limit of The Bonds, TLT notified NEED that it was terminating the Phase II Subcontract. TLT decided to replace the Phase II subcontract with a change order in the amount of $643,200 to be added to the Phase I Subcontract. The $643,200 change order was the same amount as the Phase II Subcontract.

50. TLT knew that, even with the increase of the amount of the Phase I Subcontract through a change order, the amount of the Phase I Subcontract was substantially less than the actual value of NEED's subcontract work.

51. On June 10, 2008, approximately three months after First Sealord increased the amount of The Bonds, TLT notified NEED that it was not completing its subcontract work in a timely fashion. At this time, TLT also notified NEED that it would begin supplementing NEED's workforce, and backcharging the costs of supplementation to NEED.

52. Prior to June 10, 2008, First Sealord was never advised that NEED was not completing its subcontract work in a timely fashion, or that TLT intended to supplement NEED's workforce.

53. TLT knew that if NEED could not pay for the cost of TLT's supplementation of NEED's workforce, then First Sealord would be responsible for those costs under the terms of The Bonds.

54. As a result of NEED's ongoing inability to complete it subcontract work, First Sealord was required to intervene, and it began funding another subcontractor, G.J. Caruso Industries, Inc., ("GJC") to supplement NEED's workforce. First Sealord subsequently retained GJC to complete NEED's subcontract work. First Sealord was also required to pay equipment and material suppliers in connection with the completion of NEED's subcontract work.

55. First Sealord has incurred costs of approximately $1,241,490 for the completion of NEED's subcontract work on the Project.

56. Subsequent to First Sealord's funding of labor, equipment and materials in connection with completion of NEED's subcontract work, and in the course of reviewing TLT's Project documents, First Sealord discovered the substantial discrepancy between the amount of

the Phase I Subcontract and the actual value of NEED's subcontract work, and TLT's knowledge of this discrepancy.  First Sealord also discovered that, prior to its decision to increase the amount of The Bonds, TLT had problems with NEED's performance of its subcontract work and that a dispute existed between NEED and TLT as to the scope of the Phase I Subcontract.

## COUNT I
### (Declaratory Judgment – 28 U.S.C. § 2201)

57.    First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 56 of the Complaint as if set forth fully herein.

58.    As a result of the foregoing, an actual controversy exists between First Sealord and TLT as to whether The Bonds are void due to the actions of TLT.

59.    As a result of the foregoing, an actual controversy exists between First Sealord and TLT as to whether the First Sealord's obligations under The Bonds have been discharged.

60.    As a result of the foregoing, First Sealord is entitled to a declaration pursuant to 28 U.S.C. § 2201 to the effect that it is exonerated and discharged from any and all obligations under The Bonds, because The Bonds are void.

## COUNT II
### (Fraud In The Inducement)

61.    First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 60 of the Complaint as if set forth fully herein.

62.    TLT misrepresented and concealed material facts by drafting and executing the Phase I Subcontract and the Phase II Subcontract in amounts less than $1,000,000, communicated such information to First Sealord through its bonding agent, and failed to disclose the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts, even though TLT had reason to know that

this information was critical to First Sealord's determination of whether to undertake the risk involved with issuing The Bonds for NEED's work on the Project.

63. As a result of TLT's misrepresentations, First Sealord was induced to issue the The Bonds, with TLT named as obligee.

64. First Sealord's reliance on TLT's misrepresentations was reasonable.

65. As a result of TLT's misrepresentations and First Sealord's reasonable reliance, First Sealord has suffered and continues to suffer damages.

## COUNT III
### (Fraud/Intentional Misrepresentation)

66. First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the Complaint as if set forth fully herein.

67. TLT misrepresented an existing material fact by drafting and executing the Phase I Subcontract and the Phase II Subcontract in amounts less than $1,000,000, communicated such information to First Sealord through its bonding agent, and failed to disclose the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts, even though TLT had reason to know that this information was critical to First Sealord's determination of whether to undertake the risk involved with issuing The Bonds for NEED's work on the Project.

68. TLT made these misrepresentations recklessly or with knowledge of their falsity.

69. TLT intended First Sealord to rely on these misrepresentations.

70. First Sealord did, in fact, rely on these misrepresentations, and issued The Bonds, with TLT names as obligee, as a result of such reliance.

71. As a result, First Sealord has suffered and continues to suffer damages.

## COUNT IV
### (Negligent Misrepresentation)

72. First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 71 of the Complaint as if set forth fully herein.

73. TLT provided misleading information, and withheld material facts during the bonding process, by drafting and executing the Phase I Subcontract and the Phase II Subcontract in amounts less than $1,000,000, communicated such information to First Sealord through its bonding agent, and failed to disclose the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts, even though TLT had reason to know that this information was critical to First Sealord's determination of whether to undertake the risk involved with issuing The Bonds for NEED's work on the Project.

74. TLT knew or should have known that the facts submitted to First Sealord were misleading, and that the facts withheld from First Sealord were material.

75. TLT, through its bonding agent, failed to exercise reasonable care or competence in preparing, obtaining and/or communicating these facts relative to The Bonds.

76. First Sealord relied on these misrepresentations, and issued The Bonds as a result of such reliance.

77. First Sealord's reliance on the TLT's representations prior to issuing The Bonds was reasonable and was foreseeable to TLT.

78. As a result of such reliance, First Sealord has suffered and continues to suffer damages.

## COUNT V
### (Fraudulent Concealment)
### Restatement (Third) Suretyship And Guaranty § 12
### and Restatement (Second) of Contracts § 164.

79. First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 78 of the Complaint as if set forth fully herein.

80. By virtue of the foregoing, TLT knew facts unknown to First Sealord that materially increased the risk beyond which TLT had reason to believe that First Sealord intended to assume.

81. TLT had reason to believe that these facts were unknown to First Sealord.

82. TLT had a reasonable opportunity to communicate these facts to First Sealord.

83. TLT's nondisclosure of these facts to First Sealord constituted a material misrepresentation.

84. First Sealord's manifested assent to The Bonds was induced by fraudulent or material misrepresentations and omissions by TLT, through its bonding agent, at the time of the execution of The Bonds.

85. The Bonds were void at the time TLT demanded First Sealord make payments and provide performance on the Project.

86. TLT's wrongful conduct caused injury to First Sealord, for which it is entitled to damages.

## COUNT VI
### (Equitable Estoppel)

87. First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 86 of the Complaint as if set forth fully herein.

88. TLT provided information, and withheld facts during the bonding process, by drafting and executing the Phase I Subcontract and the Phase II Subcontract in amounts less than $1,000,000, communicated such information to First Sealord through its bonding agent, and failed to disclose the discrepancy between the amount of the NEED Subcontracts and TLT's estimates for the value of the work covered by the NEED Subcontracts, even though TLT had reason to know that this information was critical to First Sealord's determination of whether to undertake the risk involved with issuing The Bonds for NEED's work on the Project.

89. TLT intended First Sealord to rely on these representations.

90. First Sealord relied on these representations, and issued The Bonds as a result of such reliance.

91. First Sealord's reliance on TLT's representations was reasonable and was foreseeable to TLT prior to First Sealord's issuance of The Bonds.

92. As a result of such reliance, First Sealord has suffered and continues to suffer damages.

### COUNT VII
**(Unjust Enrichment)**

93. First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 92 of the Complaint as if set forth fully herein.

94. First Sealord provided labor, materials, services, and payments on the Project, to and for the benefit of TLT.

95. In accepting the labor, materials, services, and payments provided by First Sealord, TLT knew or should have known that The Bonds were procured through misrepresentation and concealment of material facts, were void, and that First Sealord was under no obligation to provide such performance or payments.

96.     TLT accepted and received the benefits of First Sealord's labor, materials, services, and payments, even though First Sealord had no obligation to perform such work or make such payments.

97.     As a result of TLT's wrongful conduct, TLT has been unjustly enriched at the expense of First Sealord.

98.     As a result of TLT's wrongful conduct, First Sealord has suffered and continues to suffer economic harm.

## COUNT VIII
### (Violation Of G.L. c. 93A)

99.     First Sealord repeats and incorporates by reference the allegations set forth in paragraphs 1 through 98 of the Complaint as if set forth fully herein.

100.    TLT was at all material times engaged in the conduct of a trade or business within the meaning of G.L. c. 93A.

101.    The wrongful acts and omissions of TLT alleged above occurred substantially and primarily in Massachusetts, and constitute unfair and deceptive acts and practices within the meaning of G.L. c. 93A, §§ 2, 11.

102.    TLT's unfair and deceptive acts and practices were knowing and willful in violation of G.L. c. 93A.

103.    First Sealord has suffered substantial harm and damage which was directly and proximately caused by these unfair and deceptive acts and practices.

### Prayer for Relief

WHEREFORE, plaintiff First Sealord Surety, Inc. demands judgment against defendant TLT Construction Corp. for all relief allowed under law, including:

    a.      For declaratory judgment to the effect that First Sealord is exonerated and discharged from any and all obligations under The Bonds, because such Bonds are void;

    b.      Damages, together with interest, in an amount to be determined at trial;

    c.      Multiple damages, together with interest, pursuant to G.L. c. 93A;

    d.      Attorneys' fees and costs of this action pursuant to G.L. c. 93A; and

    e.      All such other relief that this Court deems just and equitable.

## JURY TRIAL

First Sealord Surety, Inc. demands a trial by jury on all issues so triable.

Respectfully submitted,

FIRST SEALORD SURETY, INC.,

By its Attorneys,

/s/  Francis R. Powell
Bert J. Capone, BBO #072880
bcapone@cetcap.com
John J. McDonnell, BBO #567525
jmcdonell@cetcap.com
Francis R. Powell, BBO #641325
fpowell@cetcap.com
CETRULO & CAPONE LLP
Two Seaport Lane
Boston, MA 02210
Tel:  (617) 217-5500
Fax:  (617) 217-5200