UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                   )
FIRST SEALORD SURETY, INC.,        )     CIVIL ACTION No.: 1:10-CV-11048-JLT
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )
TLT CONSTRUCTION CORP.,            )
                                   )
            Defendant.             )
_____)

**FIRST SEALORD SURETY, INC.'S
<u>MOTION TO STAY ARBITRATION</u>**

Plaintiff, First Sealord Surety, Inc. ("First Sealord"), hereby moves to stay the arbitration demanded by defendant, TLT Construction Corp. ("TLT"). Put simply, the instant action requires the Court to consider the threshold matter of whether or not First Sealord's claims are subject to arbitration. The plain language of the arbitration clause relied upon by TLT—which is located in a subcontract that First Sealord was not a party to—makes clear that only those claims involving the "subcontractor," NEED Construction, LLC ("NEED"), are subject to arbitration.

The gravamen of First Sealord's claim is that TLT withheld and concealed information from First Sealord which TLT knew, or had reason to know, was material to First Sealord's decision to issue performance and payment bonds (the "Bonds") for the subcontracts TLT entered into with NEED in connection with a public construction project ("NEED Subcontracts"). TLT's conduct rendered the bonds void, *ab initio*. Accordingly, before First Sealord can be forced to arbitrate its claims, it must first be determined by the Court whether or not the claims are subject to arbitration. Likewise, arbitration should be stayed because the instant litigation will undoubtedly interfere with the arbitration demanded by TLT. Should the

1

Court determine that First Sealord's claims are not subject to arbitration, the underlying question of whether the Bonds are void is a predicate to whether or not First Sealord is liable for TLT's claimed damages in the arbitration.  Proceeding with arbitration, while simultaneously litigating this matter, could lead to inconsistencies in fact-finding and rulings of law.

## BACKGROUND

On or about October 22, 2009, TLT filed a Demand for Arbitration ("Demand") against First Sealord with the American Arbitration Association, based on First Sealord's status as NEED's bond surety.  TLT's Demand claimed that the "Surety[, First Sealord,] is responsible for completion costs associated with [a] delinquent sub [NEED]."  See Demand, attached to TLT's Motion to Dismiss at Exhibit C.  First Sealord filed an Answer denying liability for completion costs, and asserted a Counterclaim alleging that TLT wrongfully depleted the bonded Subcontract balances by (1) paying NEED for work beyond the scope of the bonded Subcontract and (2) wrongfully assessing back-charges against the bonded Subcontract funds.  See Answering Statement And Counterclaim of First Sealord, attached to TLT's Motion to Dismiss at Exhibit D.

On or about June 21, 2010, First Sealord filed its Complaint against TLT in this action, alleging that TLT withheld and concealed information from First Sealord, which TLT knew or had reason to know was material to First Sealord's decision to issue the Bonds in connection the NEED Subcontracts.  Pursuant to the NEED Subcontracts, which were incorporated by reference into the Bonds, TLT and NEED agreed as follows:

> Notwithstanding any other provisions in TLT's contract with the owner **it is hereby agreed and understood that in the event of any claim, controversy or dispute involving subcontractor, TLT may, at its sole discretion, require submission to the Local Office of the American Arbitration Association**, Construction Industry Rule and judgment upon such award may be entered in the Courts of the Commonwealth of Massachusetts.  It is further agreed and understood that any surety or insurer to subcontractor shall be obliged to

2

>participate in and be bound by such Arbitration should TLT elect to demand same.

See Subcontract at ¶ 19, attached as Exhibit A to TLT's Motion to Dismiss (emphasis added); AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-49 (1986) (holding that a party cannot be compelled to submit a dispute to arbitration if it has not contractually agreed to do so). Arbitration is presently scheduled to begin on September 27, 2010.

## ARGUMENT

As an initial matter, it cannot be questioned that the Court has the power to stay the arbitration demanded by TLT. In Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co., 643 F.2d 863, 867-68 (1st Cir. 1981), the Court explained that "a federal court …[may] enjoin an arbitration proceeding which is not called for by the contract" because such a stay would not "interfere[ ] with [ ]either the letter [ ]or the spirit of" the Federal Arbitration Act. The Court reasoned that "to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present." See id.; see also Tai Ping Ins. Co. v. M/V Warschau, 731 F.2d 1141, 1144 (5th Cir. 1984) ("There is no provision in the Act for a stay of arbitration. Nonetheless, the case law clearly establishes that, in the appropriate circumstances, such an order is within the power of the district court."); L.F. Rothschild & Co., Inc. v. Katz, 702 F. Supp. 464, 467 (S.D.N.Y. 1988) (same). Accordingly, it is within this Court's power to order a stay of arbitration.

The Court should order a stay for two reasons. First, a stay should issue because it is necessary for the Court to determine if the instant claim is actually subject to arbitration. It is unreasonable, and contrary to the law, to compel arbitration before deciding whether or not a specific claim is actually arbitrable. Second, to the extent the Court concludes that this action is not subject to arbitration, arbitration should be stayed because pursuing concurrent litigation and

arbitration is likely to lead to inconsistent fact-finding and determinations as to questions of law. See, e.g., Petroleum Helicopters, Inc. v. Boeing-Vertol Co., 478 F. Supp. 84, 86 (D.C. La. 1979).

**I.     Arbitration Should Be Stayed Because It Must First Be Determined If This Claim Is Subject To Arbitration.**

It is necessary to stay arbitration to uphold the fundamental principles explicated by the United States Supreme Court in AT & T Techs., Inc. v. Communications Workers of America:

> The principles necessary to decide this case are not new.
> ….
> The first principle… is that "**arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit**." This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.
> The second rule, which follows inexorably from the first, is that **the question of arbitrability---whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance--is undeniably an issue for judicial determination**. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.
> The Court expressly reaffirmed this principle in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). The "threshold question" there was whether the court or an arbitrator should decide if arbitration provisions in a collective-bargaining contract survived a corporate merger so as to bind the surviving corporation. The Court answered that there was "no doubt" that this question was for the courts.  "'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' ... **The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty**."

475 U.S. 643, 648-649 (1986) (internal citations omitted) (emphasis added); see also Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005) (concluding the it is for the court to interpret the plain meaning of a contract to determine if the parties have agreed to submit a matter to arbitration); PaineWebber Inc. v. Elahi, 87 F.3d 589, 596 (1st Cir. 1996) ("the question whether the subject matter of the underlying dispute is within the scope of an expressly limited arbitration agreement

4

is an 'arbitrability' issue" for the court). In other words, First Sealord cannot be compelled to arbitrate this claim unless and until this Court determines—*first*—that First Sealord's claim is subject to the arbitration provision contained in the subcontract between TLT and NEED.

As set forth more fully in its Opposition to TLT's Motion To Dismiss, pp. 7-13, First Sealord's claims of fraud against TLT are plainly not subject to the arbitration clause, which specifies that "any claim, controversy or dispute **involving subcontractor**, TLT may, at its sole discretion, require submission" to arbitration. See Subcontract at ¶ 19, attached as Exhibit A to TLT's Motion to Dismiss (emphasis added). The use of the terms "subcontractor" and "involving"—instead of the significantly broader terms "subcontract" and "arising out of or related to"—is key. "Interpretation of language in a written contract is a question of law for the court, and if the words are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense." Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield, 49 Mass. App. Ct. 108, 111 (2000). The plain and ordinary meaning of the phrase, "claims involving subcontractor," limits arbitration only to those claims that include NEED (or NEED's performance). NEED is not a party to this case, nor is it a necessary party for the adjudication of First Sealord's claims against TLT. Accordingly, First Sealord's claim is not subject to arbitration.

This plain reading is supported by case law declining to extend the scope of arbitration clauses—that are not located in the bond, but have been merely incorporated by reference—to include a surety's claim on the bond itself. For example, in Fidelity and Deposit Co. of Maryland v. Parsons & Whittemore Contractors Corp., the court considered a broader arbitration provision than the one presently before the Court, which provided for arbitration of "disputes arising under the subcontract." 48 N.Y.2d 127, 397 N.E.2d 380 (1979). The court determined that "the stay should be upheld" with respect to the disputes that arose out of the performance

5

bond, reasoning that the surety "did not agree … that separate and distinct controversies … which might arise under the terms of the performance bond between the general contractor … and the surety company would be submitted to arbitration." Id. at 129, 397 N.E.2d at 381; see also Gloucester City Bd. of Educ. v. Am. Arbitration Ass'n, 333 N.J. Super. 511, 755 A.2d 1256, 1261-63 (App. Div. 2000) (adopting holding of Fidelity and Deposit Co. of Maryland).

This Court has indicated that it "finds much wisdom in Fidelity and Deposit's apparent reluctance to equate a surety's agreement that certain disputes be tendered to arbitration with its own obligation to arbitrate those disputes." Aetna Cas. and Sur. Co. v. L'Energia, Ltd. P'ship, 1996 WL 208497, at *5 (D. Mass. 1996) (O'Toole, J.). Accordingly, because this claim is plainly not subject to arbitration, it would be manifestly unjust if First Sealord were required to proceed with the arbitration presently scheduled to begin in late September 2010, before the Court decides this fundamental, threshold issue.

## II.     Arbitration Is Premature Because It Could Lead To Inconsistencies Between The Court's And The Arbitrator's Finding-Of-Fact And Law.

By extension, to the extent the Court concludes, as it must, that this action is not subject to arbitration, the September 2010 arbitration should be stayed because litigating this action while simultaneously conducting arbitration is likely to lead to inconsistent fact-finding and rulings of law. In Petroleum Helicopters, Inc. v. Boeing-Vertol Co., 478 F. Supp. 84, 86 (D.C. La. 1979) the Court wrote:

> At the heart of plaintiff's case, of course, is the question of whether any party owes money to the plaintiff. Unless and until the court decides this issue in the plaintiff's favor, arbitration of the issue of indemnity or contribution between MBB and Boeing is premature. Moreover, in deciding the issue of liability *vel non* to the plaintiff, the court will reach factual conclusions about whether a manufacturing defect existed and what the nature of any defect was. It seems likely that an arbiter would have to decide these issues before reaching a conclusion on Boeing's claim for indemnity or contribution from MBB. Thus, if the arbiter were allowed to proceed while the court is trying the plaintiff's case,

6

>there would be a real possibility of inconsistent fact-finding between the arbiter and the court.
>
>Accordingly, arbitration of the question of indemnity or contribution between MBB and Boeing will be stayed pending the decision by this court on whether there is any liability at all to the plaintiff. A stay of arbitration under these circumstances is within the court's power.

(footnotes and internal citations omitted).  Just as liability precedes the question of indemnity or contribution, whether or not the Bonds are voided, is an inherent predicate to any determination that First Sealord is required to perform pursuant to those Bonds.  It runs contrary to reason to conduct an arbitration on TLT's claims concerning NEED's performance, and First Sealord's claims that TLT wrongfully depleted the NEED Subcontract balances and incorrectly assessed back-charges, where this Court will consider and possibly conclude that the Bonds are void.  See, e.g., Cam-Ful Industries, Inc. v. Fidelity and Deposit Co. of Maryland, 922 F.2d 156, 162 (2d Cir. 1991) ("[a] surety does not have to pay a claimant who 'during negotiations, actively and fraudulently conceals pertinent facts.'"); St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp., 646 F.2d 1064, 1073 (5th Cir. 1981) (noting validity of surety bond may be vitiated ab initio by the creditor's active and fraudulent concealment during negotiations); State v. Peerless Ins. Co., 67 N.Y.2d 845, 848, 501 N.Y.S.2d 651, 653, 492 N.E.2d 779 (1986) (stating that a surety's "guarantee induced by fraudulent misrepresentation or concealment of a material fact is void").  For these reasons, the Court should stay the arbitration.  An arbitrator's possible determination that First Sealord is required to perform pursuant to the Bonds, or that TLT wrongfully assessed back-charges and reduced contract balances, would be fundamentally inconsistent with this Court's determination that the Bonds are void, *ab initio*.

## CONCLUSION

WHEREFORE, the plaintiff, First Sealord Surety, Inc., respectfully requests that the Honorable Court stay the arbitration proceedings, which are currently scheduled to begin on September 27, 2010, until the Court resolves the claims in this action.

Respectfully submitted,

FIRST SEALORD SURETY, INC.,

By its Attorneys,

 /s/  Bert J. Capone_____
Bert J. Capone, BBO #072880
*bcapone@cetcap.com*
John J. McDonnell, BBO #567525
*jmcdonell@cetcap.com*
Francis R. Powell, BBO #641325
*fpowell@cetcap.com*
CETRULO & CAPONE LLP
Two Seaport Lane
Boston, MA 02210
Tel:  (617) 217-5500
Fax:  (617) 217-5200

## CERTIFICATE OF SERVICE

Pursuant to LR. 5.2(b)(2), I, John J. McDonnell, hereby certify that I have, on this 23rd day of July, 2010, served a copy of the above document, in accordance with ECF requirements for the Federal District Court for the District of Massachusetts, upon all counsel of record who have requested such ECF service.

/s/ John J. McDonnell              _____
John J. McDonnell