UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIRST SEALORD SURETY, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 10-11048-JLT |
| | * |
| TLT CONSTRUCTION CORP., | * |
| | * |
| Defendant. | * |
| | * |

MEMORANDUM

September 27, 2010

TAURO, J.

I.   Introduction

This action arises out of an agreement between Plaintiff Sealord Surety, Inc. ("Sealord") and Defendant TLT Construction Corp. ("TLT"), under which Plaintiff provided performance and payment bonds for a subcontractor on one of Defendant's construction projects. In its Amended Complaint, Plaintiff seeks declaratory relief along with damages. Presently at issue are Defendant's Motion to Dismiss [#4] and Plaintiff's Motion to Stay Arbitration [#9]. For the reasons set forth below, this court reserves judgment on Defendant's Motion to Dismiss [#4], and Plaintiff's Motion to Stay Arbitration [#9] is DENIED.

II.   Background[1]

Plaintiff is a Pennsylvania corporation that is licensed to issue surety bonds in

---

[1] Given the lack of an Answer, this court sets forth the facts as presented in the Amended Complaint.

1

Massachusetts.[2] Defendant is a Massachusetts corporation that on April 30, 2007 submitted a bid for the construction of a new middle-high school to be built in Manchester-by-the-Sea, Massachusetts (the "Project"), after NEED Construction LLC ("NEED") had submitted a $1,725,984 subcontract proposal to perform portions of the work for the Project.[3] Defendant was chosen as the lowest bidder for the Project, became the general contractor, and entered into subcontract negotiations with NEED.[4] NEED provided additional proposals in May 2007 for between approximately $1,725,984 and $1,950,000 to perform subcontract work, but Defendant divided NEED's subcontract work into two components.[5] On May 18, 2007, Defendant and NEED entered into the Phase I Subcontract for a value of $964,800 and the Phase II Subcontract for a value of $643,200 (the "NEED Subcontracts"), for a total of $1,608,000.[6]

Before executing the NEED Subcontracts, Defendant prepared its own estimates for the work covered by the NEED Subcontracts in connection with developing its costs for the general contract for the Project.[7] Defendant's total estimate for the work identified in the NEED Subcontracts was $3,070,225. But, it entered into the NEED Subcontracts for a total of

---

[2] Am. Compl. ¶ 1 [#7].

[3] Am. Compl. ¶¶ 12-13 [#7].

[4] Am. Compl. ¶ 14 [#7].

[5] Am. Compl. ¶¶ 14, 16 [#7].

[6] Am. Compl. ¶¶ 17-18 [#7]. The NEED Subcontracts contemplated a reduced scope of work as compared to the scope of work contemplated in NEED's prior proposals. Am. Compl. ¶ 20 [#7].

[7] Am. Compl. ¶ 21 [#7].

approximately $1,608,000.[8] Prior to entering into the NEED Subcontracts, Defendant never disclosed to NEED or Plaintiff the substantial discrepancies in value between its estimates and the estimates provided by NEED.[9]

Defendant required NEED to obtain performance and payment bonds for the NEED Subcontracts before NEED could begin its subcontract work.[10] NEED was unsuccessful in obtaining such bonds. Defendant's bonding agent, Dick Caruso of Curtain International, then contacted Plaintiff with a proposal to bond the NEED Subcontracts.[11]

Defendant knew that Plaintiff would obtain an independent engineering review of the scope and value of the work to be performed under a subcontract only if the subcontract's value were greater than $1,000,000.[12] Plaintiff alleges that Defendant, to avoid that independent engineering review, drafted and executed the Phase I Subcontract and the Phase II Subcontract in amounts less than $1,000,000.[13] Additionally, Plaintiff claims that Defendant had reason to know that information about the substantial discrepancy in estimates was critical to Plaintiff's

---

[8] Am. Compl. ¶ 24 [#7].

[9] Am. Compl. ¶ 25 [#7].

[10] Am. Compl. ¶ 26 [#7].

[11] Am. Compl. ¶¶ 28-29 [#7]. At all relevant times, Caruso, and all other representatives of Curtain International, were acting as agents of Defendant when communicating with Plaintiff. Defendant counters, however, that Caruso was an agent and attorney for Plaintiff, as evidenced by Exhibit A of Plaintiff's Amended Complaint and Plaintiff's decision to not bring claims against Caruso or Curtain International. Def.'s Opp. Pl.'s Mot. Stay, 11-12 [#12].

[12] Am. Compl. ¶ 30 [#7]. Defendant does not dispute the existence of this internal policy but points out that there is no showing that Defendant actually knew or had reason to know of this policy. Def.'s Opp. Pl.'s Mot. Stay, 12-13 [#12].

[13] Am. Compl. ¶ 32 [#7].

determination of whether to undertake the risk involved with issuing performance and payment bonds for the NEED Subcontracts.[14] In reliance on the Phase I Subcontract, which would pay $964,800, Plaintiff issued performance and payment bonds on July 30, 2007 for the Phase I Subcontract ("the Bonds").[15] The Bonds identified NEED as the principal and Defendant as the obligee.[16]

NEED began to perform the Phase I Subcontract in July 2007. Shortly thereafter, various disputes arose between Defendant and NEED over the scope of the Phase I Subcontract work.[17] NEED began to experience significant difficulties in performing its subcontract work. Those difficulties included completing its work according to the Project schedule and paying its material and equipment suppliers.[18] Defendant, through its bonding agent, Curtain International, approached Plaintiff to request a modification of and increase in the amount of the Bonds.[19] Plaintiff also claims that Defendant did not disclose information concerning the problems with NEED's performance of its subcontract work, nor did it disclose the dispute between NEED and Defendant as to the scope of the Phase I Subcontract.[20] Relying on the information available to it,

---

[14] Am. Compl. ¶ 35 [#7].

[15] Am. Compl. ¶ 36 [#7].

[16] Compl., Ex. A, B [#1].

[17] Am. Compl. ¶ 40 [#7]. Defendant asserted that additional items of work were covered by the Phase I Subcontract, even though those items of work were not identified in the Phase I Subcontract. Am. Compl. ¶ 41 [#7].

[18] Am. Compl. ¶ 43 [#7].

[19] Am. Compl. ¶ 44 [#7]. Defendant appears to dispute for whom Curtain International was acting. See supra n.11.

[20] Am. Compl. ¶ 46 [#7].

Plaintiff agreed to modify the Bonds.[21]

Shortly after Plaintiff increased the limit of the Bonds, Defendant notified NEED that it was terminating the Phase II Subcontract and replacing it with a "change order" to be added to the Phase I Subcontract.[22] On June 10, 2008, approximately three months after Plaintiff increased the amount of the Bonds, Defendant notified NEED that NEED was not completing its subcontract work in a timely fashion.[23] At that time, Defendant also notified NEED that Defendant would begin supplementing NEED's workforce and backcharging the costs of supplementation to NEED.[24] Defendant knew that if NEED could not pay for the cost of Defendant's supplementation of NEED's workforce, then Plaintiff would be responsible for those costs under the terms of the Bonds.[25] Plaintiff has incurred costs of approximately $1,241,490 in connection with its performance of NEED's subcontract work on the Project.[26]

Plaintiff seeks declaratory relief and damages arising out of its issuance of the performance

---

[21] Am. Compl. ¶ 47 [#7].

[22] Am. Compl. ¶ 49 [#7]. The $643,200 change order was the same amount as the Phase II Subcontract. Am. Compl. ¶ 49 [#7].

[23] Am. Compl. ¶ 51 [#7].

[24] Am. Compl. ¶ 51 [#7].

[25] Am. Compl. ¶ 52 [#7].

[26] Am. Compl. ¶ 55 [#7]. As a result of NEED's ongoing inability to complete it's subcontract work, the Bonds required Plaintiff to intervene, and Plaintiff began funding another subcontractor, G.J. Caruso Industries, Inc. ("GJC") to supplement NEED's workforce. Am. Compl. ¶ 54 [#7]. Plaintiff subsequently retained GJC to complete NEED's subcontract work. Am. Compl. ¶ 54 [#7]. The Bonds also required Plaintiff to pay equipment and material suppliers in connection with the completion of NEED's subcontract work. Am. Compl. ¶ 55 [#7].

and payment bonds.[27] Plaintiff contends that it is entitled to a judgment declaring that its obligation under the bonds is void because Defendant withheld or concealed information that Defendant knew or had reason to know was material to Plaintiff's decision of whether (I) to undertake the risk of issuing the bonds; and (ii) to modify the terms of the bonds to include additional work on the project.[28] Plaintiff also seeks recovery of damages for fraudulent inducement, fraud/intentional misrepresentation, negligent misrepresentation, fraudulent concealment, unjust enrichment, equitable estoppel, and unfair and deceptive acts or business practices in violation of Massachusetts General Law.[29]

The NEED Subcontracts contained an arbitration clause. Specifically, Article 4, Paragraph 19 of the Subcontracts provided:

> Notwithstanding any other provisions in TLT's contract with the owner it is hereby agreed and understood that in the event of any claim, controversy or dispute involving subcontractor, TLT may, at its sole discretion, require submission to the Local Office of the American Arbitration Association, Construction Industry Rule and judgment upon such award may be entered in the Courts of the Commonwealth of Massachusetts. . . . It is further agreed and understood that any surety or insurer to subcontractor shall be obliged to participate in and be bound by such Arbitration should Defendant elect to demand.[30]

Moreover, the surety bonds executed by Plaintiff incorporated the terms of the NEED contracts and did not specifically exclude the arbitration provision.[31]

---

[27] Am. Compl. Introduction.

[28] Am. Compl. Introduction.

[29] Am. Compl. Introduction; M.G.L., ch. 93A, §§ 2, 11.

[30] Def.'s Mot. Dismiss, Ex. A, 4 [#4].

[31] Def.'s Mot. Dismiss, 2 [#4]; Compl., Ex. 2 [#1]. The bonds provide:

Given the above provisions, Defendant contends that this matter should be dismissed. Defendant argues that the matter should be governed by Article 4, Paragraph 19 ("arbitration clause") of the NEED Subcontracts because an arbitration claim has already been filed.[32] Defendant argues that this dispute is covered under the terms contained in the arbitration clause of the NEEDS Subcontracts. Specifically, Defendant cites the terms "any matter involving subcontractor."

III.  Discussion

Plaintiff seeks an order from this court staying arbitration[33] so this court may determine whether the instant claim[34] is subject to arbitration. Plaintiff argues that it cannot be compelled to arbitrate its claims until this court determines whether its claims are subject to the arbitration provision contained in the subcontracts between Defendant and NEED.[35] Defendant opposes the

---

WHEREAS, Subcontractor has by written agreement dated May 18, 2007 entered into a Contract with General Contractor for section # 02200 Earthwork Section 02270 Sediment and Erosion Control, Section 02665 Water Systems and Section 02700 Site Utilities for Phase One Construction of The Manchester-Essex Middle High School, Manchester-by-the Sea, MA which Contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

[32] Def.'s Mot. Dismiss, 2 [#4]. Defendant's demand for arbitration against Plaintiff was filed October 22, 2009 and Plaintiff has filed an Answering Statement as well as a Counterclaim.

[33] Pl.'s Mot. Stay Arb. [#9].

[34] Plaintiff alleges multiple claims against Defendant in its Complaint but collectively refers to them in its Motion to Stay Arbitration as "claims of fraud" or "fraud-related claims." Id.; Pls.' Opp. Mot. Dismiss, 14 [#8]. As Plaintiff generally chooses to discuss its claims collectively, so does this court.

[35] Pl.'s Mot. Stay Arb., 4-5 [#9]. Plaintiff's second argument relies on this court finding that the action is not subject to arbitration: namely, that concurrent litigation and arbitration could produce inconsistent fact-finding and conclusions of law. Because this court finds the action is subject to arbitration, it is unnecessary to address the second argument.

order, emphasizing that this court, if it does not dismiss Plaintiff's suit, can at least stay litigation and compel arbitration. This court agrees with Defendant and stays litigation.

As the Supreme Court has explained, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed to so submit."[36] But parties cannot avoid arbitration to which they have agreed. The Federal Arbitration Act (FAA), consequently, requires courts to stay judicial proceedings if the parties have previously agreed to arbitration as the sole means of resolving a dispute.[37] This court retains discretion to determine, on the basis of the parties' contract, whether or not a party is "bound to arbitrate, as well as what issues it must arbitrate."[38]

There is a strong presumption in favor of the "arbitrability" of a dispute whenever a contract contains an arbitration clause.[39] This strong presumption is overridden only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[40] A court may not "read out of an arbitration clause an explicit limit upon the scope of that clause"[41] to which the parties have agreed. But "any doubts concerning

---

[36] AT&T Techs. v. Communic'ns Workers of Am., 475 U.S. 643, 648-49 (1986) (internal quotations and citations omitted).

[37] 9 U.S.C. § 3. The FAA applies here because this case involves a written contract involving interstate commerce. Id. §§ 1, 2.

[38] AT&T Techs., 475 U.S. at 648-49 (internal quotations and citations omitted).

[39] Id. at 650. The purpose of the FAA is to reverse the "longstanding judicial hostility to arbitration agreements" and to place arbitration agreements on the "same footing as other contracts." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 89 (2000).

[40] AT&T Techs., 475 U.S. at 650 (internal quotations and citations omitted).

[41] Combined Energies v. CCI, Inc., 514 F.3d 168, 172 (1st Cir. 2008).

8

the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability."[42]

The federal policy favoring arbitration generally applies to "scope questions."[43] A scope question arises "'when the parties have a contract that provides for arbitration of some issues' and it is unclear whether a specific dispute falls within that contract."[44] The Parties here have a dispute as to the scope of the contract.[45]

As an initial matter, the Parties dispute whether the arbitration clause is broad or narrow.[46] A broad clause creates a presumption of "arbitrability" that is only overcome if it may be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[47] A broad arbitration clause covers all types of disputes, whereas a narrow clause covers only a limited range of disputes.[48] Article 4, Paragraph 19 has some language that is

---

[42] Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

[43] Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000) (citations omitted).

[44] Id. at 25 (citations omitted).

[45] To the extent that Plaintiff has claims that may not be classified as concerning the scope of the contract, they need not be resolved now by this court. See infra n.60.

[46] Plaintiff claims that the cases upon which Defendant relies are all broad clauses because they use the more traditional arbitration language, such as "all disputes arising out of this contract." Pl.'s Opp. Mot. Dismiss, 11-12 [#8].

[47] Paul Revere, 226 F.3d at 20 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

[48] New Eng. Cleaning Servs., Inc. v. Servs. Emps. Int'l Union Local 254, 199 F. 3d 537, 541 (1st Cir. 1999) (explaining, in the context of a labor agreement, that limitation to employee grievances and exclusion of contract termination issues constitutes a narrow clause).

clearly broad, such as "any."[49] Moreover, Article 4, Paragraph 19 is clearly not a model of a narrow clause because it is not limited to a specific set of disputes or locations.[50] The reference in Article 4, Paragraph 19 to "*any* controversy, claim or dispute *involving* subcontractor" makes the clause broader rather than narrower. Indeed, the clause is broad enough such that the presumption of "arbitrability" is applicable.

Plaintiff's argument that its claims are not subject to the arbitration clause is not persuasive. Plaintiff primarily argues that the plain and ordinary meaning of the phrase "any claim, controversy or dispute involving subcontractor"[51] means that the subcontractor, NEED, must be a party for an issue to fall within the scope of the arbitration clause.[52] First, the meaning of "involve," and thus the arbitration clause at issue, is not plain and clear.[53]

Second, even putting aside the definition of "involving," Plaintiff's focus on one part of the clause ignores the teaching of the First Circuit: "An interpretation which gives effect to all the

---

[49] Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc., 222 F. Supp. 2d 50, 55 (D. Me. 2002) ("The plain language of this clause shows that the parties intended to arbitrate "all disputes" that are not resolved by negotiation, therefore this is a broad clause."); see 83 Am. Jur. 3d Proof of Facts § 45 (2005).

[50] 83 Am. Jur. 3d Proof of Facts § 45; see also Chelsea Family Pharm., PLLC v. Medco Health Solutions, Inc., 567 F.3d 1191, 1197 (10th Cir. 2009) (explaining the analysis as whether the parties clearly manifested an intent to narrowly limit arbitration to specific disputes).

[51] Def.'s Mot. Dismiss, Ex. A, 4 [#4].

[52] Pls.' Mot Stay Arb., 5 [#9].

[53] Plaintiff invokes one dictionary definition to define "involve" as necessarily inclusive. Other dictionaries reveal definitions of "involve" that do not invoke the concept of necessary inclusivity. Oxford English Dictionary (2d ed. 1989) (listing, among others, to "imply"). In addition, the arbitration provision does not have other wording that would more clearly support Plaintiff's reading. For example, such a contract might have included "necessarily" as a modifier before "involving."

terms of a contract is preferable to one that harps on isolated provisions, heedless of context."[54] This court should strive for a "reasonable interpretation" of the arbitration provision "as a whole, while avoiding constructions that would render any term within it meaningless."[55]

Other portions of Article 4, Paragraph 19 confirm that this dispute falls within the scope of the clause.  For instance, Article 4, Paragraph 19 specifies that "any surety or insurer to subcontractor shall be obliged to participate in and be bound by such Arbitration should [Defendant] elect to demand same."  The precise meaning of this clause is unclear.  On the one hand, it could mean that the surety is bound to any arbitration that Defendant submits to the American Arbitration Association ("AAA") (so as long as the controversy or dispute involves the contractor).  On the other hand, the clause could be read to mean that once Defendant submits a dispute involving the subcontractor (i.e., as a party) to the AAA, then a surety can be forced to "participate" in "such Arbitration."  This court cannot accept that Article 4, Paragraph 19 has a clear and plain meaning, as Plaintiff desires.[56]

Given this lack of clarity combined with the presumption of "arbitrability," it is more likely

---

[54] PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 16 (1st Cir. 2010).

[55] Id.

[56] Plaintiff's reliance on Fid. & Deposit Co. of Md. v. Parsons & Whittemore Contractors Corp., 48 N.Y.2d 127 (N.Y. Ct. App. 1979), is not convincing as persuasive authority.  Plaintiff uses the case as a leading example of why, as a surety, it is not required to arbitrate disputes that concern its principal's performance where its bond is incorporated by reference into Defendant's contract with NEED.  Pl.'s Mot. Stay Arb., 5 [#9]; Pl.'s Opp. Mot. Dismiss, 15 [#8].  The language in the arbitration provision in Fidelity, however, was materially different: it referred to arbitration of "disputes arising under the subcontract." Fid. & Deposit Co. of Md., 48 N.Y.2d at 131.  Part of the Fidelity court's conclusion, that the "arbitration clause in the subcontract provided only for arbitration of disputes arising under that contract," would become unmoored from its foundation if transplanted to the differently worded arbitration provision in this case.  Id.

than not that Plaintiff's dispute involves the subcontractor. It is true that Plaintiff's claims arise from Defendant's conduct in connection with Plaintiff's Bonds and its demand for payment for its subsequent supply of labor and material, as Plaintiff claims.[57] But the Bonds were obtained and executed by NEED as the bond principal.[58] Although Plaintiff may focus its claim on Defendant's conduct and payment, the subcontractor is involved in this dispute because many of Plaintiff's claims against Defendant have the subcontractor's existence and performance as a factual predicate. For instance, Plaintiff's claim for fraudulent concealment concerns Defendant's actions specifically in regard to NEED, including the status of NEED's work, the amount of work to be performed, and the value and capability of NEED to perform the work required. This court need not say if the subcontractor is a necessary party. Rather, it is enough to say that were there to be extended litigation between the Parties, the dispute between them would require a thorough discussion of NEED, and, in turn, some level of involvement of NEED.[59] The claims of fraud are therefore issues for the arbitrator, not this court.[60]

---

[57] Pl.'s Opp. Mot. Dismiss, 8 [#8].

[58] Pl.'s Compl., Ex. A, B [#1].

[59] Cf. PaineWebber Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir.1996) ("[T]he signing of a valid agreement to arbitrate the merits of the subject matter in dispute presumptively pushes the parties across the 'arbitrability' threshold; we will then presume that other issues relating to the substance of the dispute or the procedures of arbitration are for the arbitrator. . . .").

[60] Alternatively, if Plaintiff's claims here may not be classified as concerning the scope of its Bonds but instead as concerning their validity, then this court notes that the arbitration clause would be severable from the disputed Bonds and the arbitrator could still decide the validity of the Bonds. See Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 53 (1st Cir. 2002) ("[A]n arbitration clause is severable from the contract in which it is embedded." (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-07 (1967))). Namely, because this court has found that Article 4, Paragraph 19 is a broad arbitration clause, the arbitrator can consider the issue of fraud. Large, 292 F.3d at 53 ("[A] broad arbitration clause will be held to encompass

This court is obliged to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.[61] Because this court cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,"[62] it also cannot conclude that Plaintiff has overcome the strong presumption in favor of "arbitrability."

IV.     Conclusion

For the foregoing reasons, this court reserves judgment on Defendant's Motion to Dismiss [#4], and Plaintiff's Motion to Stay Arbitration [#9] is DENIED.

AN ORDER HAS ISSUED.

                                                             /s/ Joseph L. Tauro
                                                             United States District Judge

---

arbitration of the claim that the contract itself was induced by fraud." (quoting Union Mutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir. 1985))).  Given that the Plaintiff here has made no "independent challenge to the making of the arbitration clause itself," this court "must not remove from the arbitrator consideration of a substantive challenge to a contract." Id.

[61] Moses H. Cone Mem. Hosp., 460 U.S. at 24-25.  Plaintiff's contention that ambiguity should be construed against the drafter is not applicable in this case. Pl.'s Opp. Mot. Dismiss, 9, n. 1 [#8].  Plaintiff's citation here to Paul Revere, 226 F.3d at 25, indicates a misunderstanding of the First Circuit distinction in this matter: *Contra preferentem* applies to questions such as whether a "party has entered an arbitration agreement or whether an arbitration agreement is enforceable *vel non*" but the presumption in favor of arbitration applies to the resolution-of-scope questions.  Id. at 25 (explaining that the issue of a party's standing to compel arbitration is *not* a scope question).

[62] Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 20 (1st Cir. 2000) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).